UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CONNIE DYSON, ET AL.**  CIVIL ACTION

**VERSUS**  NO. 20-1975 c/w 20-3471

**UNITED STATES OF AMERICA**  SECTION D (3)

**THIS DOCUMENT RELATES TO ALL CASES**

**ORDER**

Defendant United States of America has filed a Motion *In Limine* to Exclude the Written Report and Testimony of Plaintiffs' Retained Expert Witness, Dr. Donald H. Marks.[1] Plaintiffs Oppose the Motion,[2] and the Government has filed a Reply.[3] The Government has also filed a related Motion for Summary Judgment,[4] which is similarly opposed,[5] and to which the Government has also filed a Reply.[6] After careful review of the parties' memoranda, the record, and the applicable law, the Court denies both Motions.

**I. BACKGROUND**

This is a medical malpractice action. On September 25, 2018, Charles Dyson was admitted to the Veterans Administration Medical Center in New Orleans for robotic assisted radical retropubic prostatectomy for prostate cancer.[7] Plaintiffs

---

[1] R. Doc. 29.
[2] R. Doc. 33.
[3] R. Doc. 44.
[4] R. Doc. 30.
[5] R. Doc. 34.
[6] R. Doc. 46.
[7] R. Doc. 1-2 at 2 ¶ III.

allege that during the course of the surgery, Mr. Dyson's bladder was nicked on two occasions.[8] Mr. Dyson was discharged on September 27, 2018.[9] Plaintiffs allege that there are "conflicting notations in the chart as to whether Mr. Dyson was able to have a bowel movement during his hospitalization."[10] On October 1, 2018, Mr. Dyson went to North Oaks Hospital, at which point it was discovered he had "severe sepsis, acute ischemia of the large bowel, acute respiratory failure, acute kidney failure, acute and subacute hepatic failure, acute infraction of the large intestines, acidosis, and chronic obstructive pulmonary disease."[11] Mr. Dyson died on October 5, 2018.[12]

Plaintiff Connie Dyson is Charles Dyson's widow, and the remaining Plaintiffs are Charles Dyson's daughters.[13] They filed suit in Civil District Court for the Parish of Orleans,[14] and that suit was removed to this Court on July 10, 2020.[15] Plaintiffs allege that the physicians that treated Mr. Dyson at the Veterans Administration Medical Center breached their duty of care and caused Mr. Dyson's death by nicking his bladder, failing to properly monitor Mr. Dyson, prematurely discharging Mr. Dyson, and failing to assess his condition upon discharge.[16] Because the physicians Plaintiffs sued were federal employees acting in the scope of their employment at the

---

[8] *Id.*
[9] *Id.* at 3 ¶ IV.
[10] *Id.*
[11] *Id.* at 3 ¶ V.
[12] *Id.*
[13] R. Doc. 1-2 at 1 ¶ I. Mr. Dyson's daughters, Plaintiffs Shannon Dyson, Tuanisha Bates, Tenisha Dyson-Foster, Bernadette Penn, and Latoya Bates, were plaintiffs in the originally filed suit, but were voluntarily dismissed. *See* R. Doc. 28. On December 30, 2020, they refiled a lawsuit on the same grounds after exhausting their administrative remedies. *See* Docket 20-3471, R. Doc. 1. The two cases have now been consolidated. *See* R. Doc. 37.
[14] *See generally* R. Doc. 1-2.
[15] R. Doc. 1.
[16] R. Doc. 1-2 at 3 ¶ VI.

Veterans Administration Medical Center, the United States of America is the proper defendant in this matter under the Federal Tort Claims Act.

The United States of America now moves to exclude the testimony of Plaintiffs' retained expert, Dr. Donald H. Marks.[17] Defendant argues that Dr. Marks works only as a "hospitalist" and therefore is not qualified (under federal law and Louisiana law) to testify to a breach of the standard of care related to a specialized surgery such as a robotic assisted radical retropubic prostatectomy for prostate cancer. Defendant also argues that Dr. Marks fails to adequately explain how he reached his conclusions, and therefore Dr. Marks's testimony is not "based on sufficient facts or data" and is not "the product of reliable principles and methods." Finally, Defendant notes that Dr. Marks has been excluded in other litigations. Defendant has also filed a related Motion for Summary Judgment,[18] arguing that should the Court exclude Dr. Marks's testimony, Plaintiffs cannot prove their claims as they will lack expert testimony, which is required in a medical malpractice action.

Plaintiffs oppose Defendant's Motion *in Limine*.[19] They contend that Defendant misses the point of Dr. Marks's testimony. They argue his testimony is not being used to demonstrate a breach of the standard of care during the surgery, but rather a breach of the standard of care *after* the surgery in failing to properly monitor Mr. Dyson and discharging him improperly. They argue that testimony about this breach of care is well within Dr. Marks's expertise as a hospitalist.

---

[17] R. Doc. 29.
[18] R. Doc. 30.
[19] R. Doc. 33.

Plaintiffs further argue that Dr. Marks's report meets the standards of the Federal Rules of Evidence, and they rely on a Supplemental Report that expands on Dr. Marks's opinions. Plaintiffs also note that the safeguards of *Daubert* are less stringent when a matter is set for a bench trial, as here.

Defendant has filed a Reply,[20] in which it reiterates that under La. R.S. 9:2794 Dr. Marks is not qualified to be an expert in a medical malpractice case. Defendant also argues that the Court should not consider Plaintiff's Supplemental Expert Report, as it does not rebut Defendant's expert, Dr. Glass's, report, but is a response to the Motion *in Limine*.

## II. LEGAL STANDARD

When expert testimony is challenged, the party seeking to present the testimony has the burden of proving, by a preponderance of the evidence, that the testimony satisfies Federal Rule of Evidence 702.[21] Rule 702, which governs the admissibility of expert testimony,[22] provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) The testimony is based on sufficient facts or data;
>> (c) The testimony is the product of reliable principles and methods; and

---

[20] R. Doc. 42.
[21] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
[22] *In re Chinese Manufactured Drywall Products Liability Litigation*, No. 09-6687, 2010 WL 8368083, at *2 (E.D. La. Feb. 17, 2010).

4

> (d) The expert has reliably applied the principles
> and methods to the facts of the case.[23]

The current version of Rule 702 reflects the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[24] and *Kumho Tire Co. v. Carmichael*.[25] The threshold inquiry in determining whether an individual may offer expert testimony under Rule 702 is whether the individual possesses the requisite qualifications to render an opinion on a particular subject matter.[26] After defining the permissible scope of the expert's testimony, the court must determine whether the opinions are reliable and relevant before they can be admitted.[27] The purpose of *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury."[28]

Notably, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[29] "[A] judge in a bench trial should have discretion to admit questionable technical evidence, although of course he must not give it more weight than it deserves."[30] Although district courts retain latitude to determine how to apply the *Daubert* requirements in a bench trial, a court may not "sidestep[] Rule 702 altogether and decline to perform any assessment of [expert] testimony before trial."[31]

---

[23] Fed. R. Evid. 702.
[24] 509 U.S. 579 (1993).
[25] 526 U.S. 137 (1999).
[26] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011).
[27] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert*, 509 U.S. at 592-93).
[28] *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded by statute on other grounds) (citing *Daubert*, 509 U.S. at 590-93).
[29] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).
[30] *SmithKline Beecham Corp v. Apotex Corp.*, 247 F. Supp.2d 1011, 1042 (N.D. Ill. 2003).
[31] *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833 (3rd Cir. 2020).

### III. ANALYSIS

The first question the Court must consider is whether Dr. Marks is qualified to testify in this matter. Defendant contends that La. R.S. 9:2794 forbids Dr. Marks's testimony. That statute provides that:

> In a medical malpractice action against a physician . . . for injury or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:
>
> (a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
> (b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;
> (c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care; and
> (d) He is licensed to practice medicine . . .[32]

The statute continues: "In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether . . . the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing in that area."[33]

Defendant urges that because Dr. Marks is a hospitalist, and not a specialist, he is not qualified to testify about Mr. Dyson's ailments and the cause thereof.

---

[32] La. R.S. 9:2794(D)(1).
[33] La. R.S. 9:2794(D)(3).

6

Defendant accurately states that Dr. Marks cannot testify about the accepted standards of medical care as to the surgery that Mr. Dyson underwent, because a robotic assisted radical retropubic prostatectomy for prostate cancer is clearly a specialized area of medicine that requires specialized training and experience that Dr. Marks does not appear to have. Plaintiffs have made clear in their opposition that Dr. Marks is being offered as a medical expert to testify about "the post-operative care that Mr. Dyson received at the VA hospital."[34] As Plaintiffs point out, post-operative care *is* a topic about which a hospitalist has expertise, and about which a hospitalist may therefore testify under Louisiana law.[35] Although Defendant emphasizes that Dr. Marks conceded in his Supplemental Report that hospitalists would rely on feedback from surgeons in making a discharge decision, Dr. Marks also points out that "[a]ll hospitalists can determine adequacy for discharge, and presence of bowel function."[36] Dr. Marks also states that "[m]any surgical specialties, including Urologic Surgery, in my experience routinely rely on the hospitalist to make the discharge determination."[37] The Court therefore rejects Defendant's argument that Dr. Marks is prohibited from testifying pursuant to La. R.S. 9:2794.

---

[34] R. Doc. 33 at 1.
[35] The Court notes that Plaintiffs' state-court Petition alleges that Defendant was negligent in part because VA doctors breached the standard of care by "[i]nadvertently nicking the bladder and other organs, resulting in gangrene and infection." R. Doc. 1-2 at 3 ¶ VI(1). Evidence of this breach would require specialized expert testimony which Dr. Marks cannot give. Plaintiffs' Opposition suggests that this this is no longer the theory of their case; but were Plaintiffs to seek to hold the United States liable for a breach of the standard of care during the surgery itself, they almost certainly cannot carry their burden at trial as they lack specialized expert testimony regarding the surgery.
[36] R. Doc. 33-2 at 9.
[37] *Id.*

7

The Court next considers Defendant's argument that Dr. Marks's testimony is not "based on sufficient facts or data" and is not "the product of reliable principles and methods."[38] Dr. Marks's analysis notes that "the development of the type of postop complications experienced by Mr. Dyson after RARP should have been anticipated."[39] He further cites to studies and statics to support that proposition. Moreover, although Dr. Marks does not do much to draw a connection between his factual analysis of Mr. Dyson's care and his ultimate conclusions, the factual matter analyzed by Dr. Marks analysis is related to his final conclusions.[40] In fact, Dr. Marks's report provides a lengthy list of Mr. Dyson's medical records which were reviewed prior to the issuance of his report. The Court further points out that the report of Defendant's expert, Dr. Jon Glass, follows the same structure of Dr. Marks's report, with extensive factual background and limited conclusions.[41] Further, and importantly, this matter is set for a bench trial. "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[42] Moreover, "a judge in a bench trial should have discretion to admit questionable technical evidence, although of course he must not give it more weight than it deserves."[43] The Court will therefore not exclude Dr. Marks's report or testimony, though it will give it no more weight than it deserves at trial.

---

[38] Fed. R. Evid. 702.
[39] R. Doc. 33-3 at 9.
[40] *Compare* R. Doc. 33-3 at 4 (factual analysis of Mr. Dyson's care on September 27, the day of his discharge) *with id.* at 9 (final conclusions).
[41] *See* R. Doc. 33-4.
[42] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).
[43] *SmithKline Beecham Corp v. Apotex Corp.*, 247 F. Supp.2d 1011, 1042 (N.D. Ill. 2003).

Defendant also points to various cases where Dr. Marks's testimony has been excluded in the past.[44] But the fact that Dr. Marks has been excluded in other, unrelated cases has little relevance as to whether his current report and testimony satisfy the requirements of Louisiana law and the Federal Rules of Evidence.[45] Moreover, what limited relevance this fact may have would go to the weight Dr. Marks's testimony is afforded, and is not a proper reason to exclude his testimony wholesale. The Court has no doubt that Defendant's cross-examination of the witness will sufficiently point out any matters relevant to the Court's determination of his expertise.

Defendant counters that the Court should not consider Dr. Marks's Supplemental Expert Report. The Court notes that the Government did not oppose an extension for Plaintiffs to produce the expert report,[46] even though Plaintiff's Response with the Supplemental Report had already been filed in the record, and defense counsel had been provided the rebuttal report. The Government also relies on the Supplemental Report in its Reply.[47] In any event, given the loosened requirements of *Daubert* in a bench trial, and for the reasons stated herein, the Court would admit Dr. Marks's testimony even if it did not consider the Supplemental Expert Report.

---

[44] *See Ashburn v. Gen. Nutrition Ctr., Inc.*, No. 06-2367, 2007 WL 4225493, at *4 (N.D. Ohio Nov. 27, 2007); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. 98-20536, 2001 WL 872601, at *2 (E.D. Penn. June 19, 2001); *Arakelian v. Sec'y of Dep't of Health and Human Serv.*, No. 11-151V, 2011 WL 7051099, at *2 (Fed. Cl. Nov. 8, 2011).
[45] *See, e.g., Ecolab USA Inc. v. Diversey, Inc.*, No. 12-1984, 2015 WL 2353018, at *9 (D. Minn. May 15, 2015; *Perry v. Union Pac. Railroad Co.*, No. 19-806, 2020 WL 6290511, at *3 (D. Colo. Oct. 27, 2020).
[46] *See* R. Doc. 35 at 2 ¶ 5 ("Plaintiff has already provided the proposed rebuttal report to defense counsel. Defense counsel has been consulted and has no opposition to the granting of this Motion.").
[47] *See* R. Doc. 44 at 6 (quoting Dr. Marks's Supplemental Report).

9

Finally, because the Court denies Defendant's Motion *in Limine*, the Court also denies Defendant's Motion for Summary Judgment. As the Court has not excluded Dr. Marks's testimony, Plaintiffs have an expert on which to rely in this medical malpractice action. Indeed, the first page of Defendant's Motion for Summary Judgment asks the Court to deny it as moot should the Court decline to exclude Dr. Marks's testimony.[48]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Government's Motion *in Limine* and Motion for Summary Judgment are **DENIED**.

New Orleans, Louisiana, January 28, 2021.

                                            */s/ Wendy B. Vitter*
                                            **WENDY B. VITTER**
                                            **UNITED STATES DISTRICT JUDGE**

---

[48] *See* R. Doc. 30 at 1 ("The Court should only consider this motion if it grants the motion[] *in limine* filed by the United States regarding the testimony of Plaintiff's retained expert witness, Dr. Donald Marks, R. Doc. 29. If the Court denies that motion, the Court should deny this motion as moot.").