## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CONNIE DYSON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1975 c/w 20-3471** |
| **UNITED STATES OF AMERICA** | **SECTION D (3)** |

### THIS DOCUMENT RELATES TO ALL CASES

### ORDER

Defendant United States of America has filed a Motion for Reconsideration of the Court's prior order denying Defendant United States of America's Motion *In Limine* to Exclude Dr. Donald Marks and Motion for Summary Judgment.[1] Plaintiffs oppose the Motion.[2] After careful review of the parties' memoranda, the record, and the applicable law, the Court denies the Motion.

### I.   BACKGROUND

This is a medical malpractice action.  On September 25, 2018, Charles Dyson was admitted to the Veterans Administration Medical Center in New Orleans for robotic assisted radical retropubic prostatectomy for prostate cancer.[3] Plaintiffs allege that during the course of the surgery, Mr. Dyson's bladder was nicked on two occasions.[4] Mr. Dyson was discharged on September 27, 2018.[5] Plaintiffs allege that

---

[1] R. Doc. 52.
[2] R. Doc. 58.
[3] R. Doc. 1-2 at 2 ¶ III.
[4] *Id.*
[5] *Id.* at 3 ¶ IV.

there are "conflicting notations in the chart as to whether Mr. Dyson was able to have a bowel movement during his hospitalization."[6]  On October 1, 2018, Mr. Dyson went to North Oaks Hospital, at which point it was discovered he had "severe sepsis, acute ischemia of the large bowel, acute respiratory failure, acute kidney failure, acute and subacute hepatic failure, acute infraction of the large intestines, acidosis, and chronic obstructive pulmonary disease."[7]  Mr. Dyson died on October 5, 2018.[8]

Plaintiff Connie Dyson is Charles Dyson's widow, and the remaining Plaintiffs are Charles Dyson's daughters.[9]  Plaintiffs filed suit in Civil District Court for the Parish of Orleans,[10] and that suit was removed to this Court on July 10, 2020.[11] Plaintiffs allege that the physicians that treated Mr. Dyson at the Veterans Administration Medical Center breached their duty of care and caused Mr. Dyson's death by nicking his bladder, failing to properly monitor Mr. Dyson, prematurely discharging Mr. Dyson, and failing to assess his condition upon discharge.[12]  Because the physicians that Plaintiffs sued were federal employees acting in the scope of their employment at the Veterans Administration Medical Center, the United States of America is the proper defendant in this matter under the Federal Tort Claims Act.

---

[6] *Id.*

[7] *Id.* at 3 ¶ V.

[8] *Id.*

[9] R. Doc. 1-2 at 1 ¶ I.  Mr. Dyson's daughters, Plaintiffs Shannon Dyson, Tuanisha Bates, Tenisha Dyson-Foster, Bernadette Penn, and Latoya Bates, were plaintiffs in the originally filed suit, but were voluntarily dismissed. *See* R. Doc. 28. On December 30, 2020, they refiled a lawsuit on the same grounds after exhausting their administrative remedies. *See* Docket 20-3471, R. Doc. 1.  The two cases have now been consolidated.  *See* R. Doc. 37.

[10] *See generally* R. Doc. 1-2.

[11] R. Doc. 1.

[12] R. Doc. 1-2 at 3 ¶ VI.

The United States of America previously moved to exclude the testimony of Plaintiffs' retained expert, Dr. Donald H. Marks.[13]  Defendant argued that Dr. Marks works only as a "hospitalist" and therefore is not qualified (under federal law and Louisiana law) to testify to a breach of the standard of care related to a specialized surgery such as a robotic assisted radical retropubic prostatectomy for prostate cancer.  Defendant also argued that Dr. Marks fails to adequately explain how he reached his conclusions, and therefore Dr. Marks's testimony is not "based on sufficient facts or data" and is not "the product of reliable principles and methods." Defendant also filed a related Motion for Summary Judgment.[14]

The Court denied Defendant's Motions.[15]  The Court found that La. R.S. 9:2794, a Louisiana law regarding expert testimony in medical malpractice actions, did not prohibit Dr. Marks's testimony.  The Court determined that Dr. Marks was offered to testify regarding post-operative care, an area where Dr. Marks had expertise.  The Court further noted that while Dr. Marks conceded that he would rely on feedback from surgeons in making a discharge decision, he also stated that hospitalists can determine adequacy for discharge, including matters such as the presence of bowel function, and noted that surgical specialists often rely on the hospitalist to make the discharge decision.  The Court also rejected Defendant's arguments that Dr. Marks's testimony failed under Federal Rule of Evidence 702 and *Daubert*, and noted that the safeguards of *Daubert* are relaxed in a bench trial.

---

[13] R. Doc. 29.
[14] R. Doc. 30.
[15] R. Doc. 47.

Defendant now moves for reconsideration of this Court's order denying Defendant's Motions.[16]   Defendant argues that statements Dr. Marks made in his deposition merit reconsideration of the Court's prior Order.   Specifically, Defendant argues that Dr. Marks admitted that only a surgeon, not a hospitalist, is qualified to make certain determinations regarding post-operative care, including what constitutes a bowel movement.   Plaintiffs have filed an Opposition to Defendant's Motion,[17] arguing that Defendant cherry-picks statements from Dr. Marks's deposition testimony and takes them out of context.   Plaintiffs argue that when Dr. Marks's deposition testimony is viewed in full context, there exists no grounds for reconsideration of the Court's order. Plaintiffs also note that Defendant does not address their claim that Mr. Dyson was released without any discharge instructions.

## II.   LEGAL STANDARD

Defendant brings its Motion under Federal Rule of Civil Procedure 54.   Federal Rule of Civil Procedure 54(b) states, in relevant part:

> Any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[18]

"The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern

---

[16] R. Doc. 52.
[17] R. Doc. 58.
[18] Fed. R. Civ. P. 54(b).

Rule 59(e) motions to alter or amend a final judgment."[19]   Reconsideration under Rule 59(e) has been described as an "extreme remedy" which "should be used sparingly."[20]   Courts have considerable discretion in deciding a Rule 59(e) motion.[21] "To succeed on a Rule 59(e) motion, a [movant] must satisfy at least one of the following criteria:  (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law."[22]   Defendant here seeks reconsideration under the second criteria: newly discovered or previously unavailable evidence.  "Courts will not address new arguments or evidence that the moving party could have raised before the decision issued."[23]

## III.   ANALYSIS

### A.   Dr. Marks's Testimony

The Court understands the thrust of the Government's Motion to be that, in light of Dr. Marks's deposition testimony, he should now be excluded under La. R.S. 9:2794.  That statute provides that:

> In a medical malpractice action against a physician . . . for injury or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:

[19] *S. Snow Mfg. Co. v. SnowWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013).

[20] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[21] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[22] *Taylor v. Gusman*, No. 20-449, 2020 WL 4551586, at *1 (E.D. La. Aug. 6, 2020).

[23] *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020).

(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;
(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care; and
(d) He is licensed to practice medicine . . .[24]

The statute continues: "In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether . . . the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing in that area."[25]

The Court previously found that although Dr. Marks is a hospitalist, and not a specialist, La. R.S. 9:2794 did not preclude his testimony.  This was in large part because Dr. Marks is designated to testify about post-operative care, a subject in which he has extensive expertise.   The Court specifically found that

Although Defendant emphasizes that Dr. Marks conceded in his Supplemental Report that hospitalists would rely on feedback from surgeons in making a discharge decision, Dr. Marks also points out that "[a]ll hospitalists can determine adequacy for discharge, and presence of bowel function." Dr. Marks also states that "[m]any surgical specialties, including Urologic Surgery, in my experience routinely rely on the hospitalist to make the discharge determination."[26]

The Government argues that at his deposition, Dr. Marks made statements that further clarified that he is unqualified to testify in this matter under

---

[24] La. R.S. 9:2794(D)(1).
[25] La. R.S. 9:2794(D)(3).
[26] R. Doc. 47 at 7 (internal citations omitted).

La. R.S. 9:2794. Specifically, the Government points to Dr. Marks's statements that the urologist typically determines the criteria for release,[27] that he consults with a urologist before discharging a patient,[28] and that he would leave to the surgeons to determine what constitutes an adequate bowel movement.[29]

The Government's Motion both mischaracterizes Dr. Marks's full testimony and fails to present sufficient evidence to merit the Court revisiting its prior order. For example, Dr. Marks stated that he has been responsible for discharge decisions, though they are joint decisions with the surgeon, which does not differ from the expert report the Court previously considered.[30] While the Government included excerpts from Dr. Marks's deposition testimony where he was asked, and answered, that the surgeon sets the criteria for discharge, the Government did not include any information in its Motion about whether the doctor was asked who determines if the set criteria has been met. Although Dr. Marks stated that a urologist would "typically" determine the criteria for discharge, he emphasized that others, including

---

[27] R. Doc. 52-2 ("[Q.] [A]fter a prostatectomy when a patient is going to be discharged, there are certain things they have to meet, you know physically in the recovery. Who determines those? Is that something that the urologist determines or is that something that you determine? A. Well, the urologist typically determines what are the criteria. But the nurse and the discharge planning nurse and the floor nurse also participate.").

[28] *Id.* at 9 ("Q. Dr. Marks, have you ever discharged a patient after a prostatectomy without consulting with a urologist? A. No.").

[29] *Id.* at 7-8 ("[Q.]  After a robotic assistant prostatectomy, is it sufficient if the patient passes gas rather than having stool? Or is that something that the surgeons would have to decide? A. I was just about to say that. I would leave that to the surgeons.").

[30] *See* R. Doc. 58-1 at 2 ("Q.  Okay. And for that 30 to 50 patients that you've treated after having a prostatectomy, for any of those were you the physician responsible for making the discharge decision on patients? A. Yes. Well, I am responsible for making the discharge decision, but it's a joint decision with the surgeon.").  *See also* R. Doc. 47 at 7 (Court's prior order stating "[a]lthough Defendant emphasizes that Dr. Marks conceded in his Supplemental Report that hospitalists would rely on feedback from surgeons in making a discharge decision . . . .").

the discharge planning nurse and the floor nurse, would participate.[31]  Indeed, he testified that discharge was "everybody's responsibility.  Everybody has to do that."[32] Dr. Marks also testified more generally about Mr. Dyson's post-operative care, stating that he had a concern that he was discharged by only the urologic surgery team.[33] Moreover, Dr. Marks testified that he has had experience in dozens of discharges after a prostatectomy.[34]  In short, after reviewing the full excerpts of Dr. Marks's deposition testimony in the record, the Court does not find it appropriate to revisit its prior order, and again finds that Dr. Marks is not barred by La. R.S. 9:2794.

To the extent that Defendant seeks the Court to reconsider its prior order on the grounds of *Daubert* or Federal Rule of Evidence 702, Defendant's Motion also fails.  For the reasons described above, the Court finds that Dr. Marks has sufficient expertise to testify in this case and that his testimony would be helpful to the factfinder.  Moreover, as the Court has previously recognized, this matter is set for a bench trial.  "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."[35] Accordingly, as the Court has previously stated, it will not exclude Dr. Marks's report or testimony, though it will give it no more weight than it deserves at trial.

---

[31] *Id.* at 4 ("[Q.] [A]fter a prostatectomy when a patient is going to be discharged, there are certain things they have to meet, you know physically in the recovery.  Who determines those?  Is that something that the urologist determines or is that something that you determine?  A.  Well, the urologist typically determines what are the criteria.  But the nurse and the discharge planning nurse and the floor nurse also participate.").

[32] *Id.*

[33] *Id.* at 8 ("I think that if the medical, the medical team and the surgical team were okay with him being discharged, then – any he met the appropriate criteria for discharging a patient, then he could go.  But in this case it doesn't look like medicine was really involved.").

[34] *Id.* at 2.

[35] *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

### B.     Timeliness

The Court further finds that, on these facts, the Government's Motion is untimely, and such untimeliness acts as a separate and independent reason for denial of the Motion.  Under Federal Rule of Civil Procedure 16, federal courts have broad authority to manage their dockets.[36]  In particular, "[s]cheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner."[37]  "To achieve this end, the Court is given broad discretion to that the integrity and purpose of the pretrial order may be preserved."[38]

Here, the Court entered a Scheduling Order that set specific deadlines for the management of the case.[39]  Although certain deadlines were extended upon motion of the parties,[40] at no point did either party move to extend the deadline for motions for summary judgment or motions *in limine* regarding expert testimony.  That deadline was set for January 25, 2021.  Further, the Government did not file a motion to compel the deposition of Dr. Marks.  Instead, the Government made the decision to file its Motion *in Limine* and Motion for Summary Judgment without the benefit of Dr. Marks's testimony. Although Defendant's Motion is styled as a Motion for Reconsideration, it effectively acts as a re-urged Motion for Summary Judgment and Motion *in Limine* regarding Dr. Marks's testimony.  The purpose of setting a deadline for motions for summary judgment and motions *in limine* regarding expert testimony

---

[36] *See Prudhomme v. Tenneco Oil Co.*, 955 F.3d 390, 392 (5th Cir. 1992).

[37] *Hernandex v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 493 (S.D. Tex. 2009).

[38] *Id.* (citing *Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) for the proposition that "the district court's decision regarding whether to modify a scheduling order is afforded great deference, especially where the facts of the case suggest a lack of diligence on the part of the movant").

[39] *See* R. Doc. 15.

[40] *See* R. Docs. 18, 32, and 36.

is to avoid eleventh-hour dispositive motions such as the one at issue here, which was filed eight days before the Pretrial Conference and barely a month before trial. Dispositive motions at such a late date—whatever form they may take—contravene the purpose of the Court's Scheduling Order.  Accordingly, the Court finds that, on these facts, the Government's Motion is untimely and therefore fails procedurally as well as substantively.

## IV.    CONCLUSION

**IT  IS  HEREBY  ORDERED** that  the  Government's  Motion  for Reconsideration is **DENIED**.

New Orleans, Louisiana, March 10, 2021.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**